UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Nathaniel Salley and Joseph Salley, as Personal Representatives of the Estate of Annie Salley, ) ) ) | C/A No. 2:10-cv-00791-DCN |
| Plaintiffs, ) ) | |
| Versus ) ) | **MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS,** |
| Heartland-Charleston of Hanahan, SC, LLC, d/b/a Heartland Healthcare Center – Charleston; HCR Manorcare, Inc.; Manor Care, Inc.; Manor Care of America, Inc.; HCR Manorcare Medical Services of Florida, LLC; The Carlyle Group, ) ) ) ) ) ) ) ) | **PURSUANT TO RULES 12(B)(2) AND (B)(6), OF BEHALF OF THE CARLYLE GROUP** |
| Defendants. ) | |

Defendant The Carlyle Group submits this memorandum in support of its motion to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2), Fed. R.Civ. P., on the ground that The Carlyle Group does not have any contacts with the State of South Carolina sufficient to establish personal jurisdiction under the South Carolina long-arm statute or the Due Process Clause. In addition, The Carlyle Group should be dismissed from this action pursuant to Rule 12(b)(6), Fed. R. Civ. P., because the Plaintiffs fail to state a claim upon which relief can be granted against this Defendant based on the mere allegations that The Carlyle Group is a private equity firm which owns the Defendant Heartland facility or its parent company.

**Factual Background**

This case arises out of the care and treatment that the deceased Annie Salley received as a patient in the nursing home owned and operated by Heartland-Charleston of Hanahan, SC d/b/a Heartland Healthcare Center – Charleston. The Plaintiffs allege that the nursing home was

negligent in allowing the Patient to fall and in failing to properly respond and/or treat her after the fall.

In addition to naming the Charleston Heartland nursing home as a defendant, the Plaintiffs have also named as defendants:

    Manor Care, Inc.,

    HCR ManorCare, Inc.,

    Manor Care of America, Inc.,

    HCR ManorCare Medical Services of Florida, LLC, and

    The Carlyle Group.

As to each of these defendants the Plaintiffs allege that they own and control Heartland and/or Heartland' parent companies. [Complaint ¶¶ 22, 23, 24, 25, 26.]

In this case, the Plaintiffs do not allege that The Carlyle Group was directly or indirectly involved in the care and treatment of the Patient. Rather, the Plaintiffs apparently seek to impose liability against The Carlyle Group by piercing a series of "corporate veils" on some alter ego theory based on the barest of allegations that:

> "Heartland is owned and operated by a mega-corporation, defendant HCR ManorCare." [Complaint ¶ 4.]

> "HCR ManorCare recently has been purchased by The Carlyle Group, one of the world's largest private equity firms, with billions of dollars under management. [Complaint ¶ 5.]

> "The Carlyle Group is committed to making HCR ManorCare and Heartland even more profitable." [Complaint ¶6.]

> "The Carlyle Group is a private partnership that, upon information and belief, is based in Washington, D.C., which does business in the State of South Carolina. The Carlyle Group owns and operates Heartland and/or Heartland's parent companies. [Complaint ¶ 26.]

Defendant "The Carlyle Group" filed a motion to dismiss for lack of personal jurisdiction in the state court before this case was removed to federal court by the ManorCare Defendants.

[Docket No. 1-4.] Carlyle has filed a renewed motion to dismiss for lack of personal jurisdiction together with a motion to dismiss for failure to state a claim. While maintaining that dismissal is appropriate based on the bare, insufficient allegations of the complaint, The Carlyle Group also submits affidavits which prove that it does not own or control Heartland and/or Heartland's parent companies.

The affidavits of Jeffery W. Ferguson, the General Counsel and Managing Director of Carlyle Investment Management LLC, and Kathryn S. Hoops, Vice President and Director of Tax, Internal Audit and Risk Management for HCR Manorcare, establish that:

- "The Carlyle Group" is a trade name under which Carlyle Investment Management, LLC (CIM) operates;
- CIM is a Delaware limited liability company, with its principal place of business in Washington, D.C.;
- CIM is a registered investment advisor that manages and advises investment funds;
- CIM does not own any of the shares of HCR ManorCare, Inc.;
- CIM does manage and advise five funds which do hold ownership interests in HCR Manorcare, Inc. -- Carlyle Partners V MC, L.P., Carlyle Partners V-A MC, L.P., CP V Coinvestment A, L.P., CP V Coinvestment B, L.P. and Carlyle MC Partners, L.P. (collectively, the "Funds");
- The Funds do not own property, employee persons, or conduct any manner of business in South Carolina; and
- The Funds do not make policy or establish procedures for the operational control or patient care as the Charleston Heartland facility in issue.

3

These affidavits further establish that The Carlyle Group does not have any ownership interest in and has no control over any of the other named Defendants; rather, it only manages and advises the Funds. The Carlyle Group does not have any responsibility for the policies or procedures at the Charleston Heartland facility, and has no responsibility or involvement with the day-to-day operations at the facility in issue, or any of the affiliated entities of HCR ManorCare.

**Discussion**

**I.      Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

"When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989).   On a pretrial motion, Plaintiff "need only make a prima facie showing by pleadings and affidavits," or the district court can allow jurisdictional discovery and proceed with an evidentiary hearing to determine the facts and make the findings on minimum contacts. *Brown v. Geha-Werke GmbH*, 69 F.Supp.2d 770, 774 (D.S.C. 1999).   While the Plaintiffs are entitled to have all reasonable inferences from the proof drawn in their favor, the court must also consider any other evidence provided by the Defendant in support of its motion. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 61 (4th Cir.1993).

This court may exercise personal jurisdiction over The Carlyle Group only if the Plaintiffs can show that jurisdiction is proper under the forum state's long-arm statute and that exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir.1993). Thus, on a Rule 12(b)(2) motion to dismiss, the first step is for the court to determine whether the long-arm statute authorizes the exercise of jurisdiction under the facts presented; then, as step

4

two, the court turns to the question of whether the statutory assertion of personal jurisdiction comports with due process. However, the long-arm statute[1] has been interpreted by the South Carolina Supreme Court as extending to the outer limits of constitutional due process. *Cockrell v. Hillerich & Bradsby Co.,* 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005); *Meyer v. Paschal,* 330 S.C. 175, 181, 498 S.E.2d 635, 638 (1998). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." *Atlantic Soft Drink Co. v. S.C. Nat'l Bank,* 287 S.C. 228, 336 S.E.2d 876, 878 (1985).

---

[1] The South Carolina long-arm statute, S.C. Code Ann. § 36-2-803 (2005), provides:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:
>
> > (1) transacting any business in this State;
> >
> > (2) contracting to supply services or things in the State;
> >
> > (3) commission of a tortious act in whole or in part in this State;
> >
> > (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
> >
> > (5) having an interest in, using, or possessing real property in this State;
> >
> > (6) contracting to insure any person, property, or risk located within this State at the time of contracting;
> >
> > (7) entry into a contract to be performed in whole or in part by either party in this State; or
> >
> > (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.
>
> (B) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

The due process analysis is one of "minimum contacts" as established in *Burger King v. Rudzewicz,* 471 U.S. 462, 475-76 (1985); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92 (1980); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).  Under these precedents, a district court cannot exercise specific jurisdiction over a defendant within the bounds of due process unless the defendant has purposefully established sufficient "minimum contacts" with the forum state (the power prong) and the exercise of jurisdiction comports with notions of "fair play and substantial justice" (the fairness prong).

As articulated in these cases, minimum contacts are established when "the defendant's conduct and connection with the forum state is such that he should reasonably anticipate being haled into court there," *World-Wide Volkswagen,* 444 U.S. at 297, or when "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King,* 471 U.S. at 475.  To satisfy the power prong of the due process analysis to support specific jurisdiction over a nonresident defendant, there must be a finding that the defendant directed its activities to residents of the forum state and that the cause of action arises out of or relates to those activities. *Cribb v. Spatholt*, 382 S.C. 475, 676 S.E.2d 706 (Ct. App. 2009).  If minimum contacts are established, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Id.* at 476.

## II.     Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

It has long been accepted that when considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff.  However, more recently in *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949

6

(2009), the Supreme Court stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " (Quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.' " *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

Harris v. Option One Mortg. Corp.  261 F.R.D. 98, 104 (D.S.C. 2009)

> Under the Fed.R.Civ.P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Recent Supreme Court caselaw has interpreted this rule to require "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ( *quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct at 1949. Recitals of the elements of a cause of action bolstered only by conclusory statements will fail to insulate a pleader from a motion to dismiss. *Id.*
>
> Pursuant to *Iqbal* and *Twombly,* this court must undertake a two-prong approach in determining the sufficiency of plaintiff's complaint. First, bearing in mind that a court must accept as true all factual allegations in the complaint, this court must segregate allegations that are factually supported and those which are mere legal conclusions and not entitled to a presumption of truth. *Iqbal,* 129 S.Ct. at 1950. Second, this court must determine whether the remaining factual allegations in the complaint state a plausible claim for relief, based on "judicial experience and common sense." *Id.*

*Montague v. Dixie Nat. Life Ins. Co*., 2010 WL 753342, 2 (D.S.C. 2010) (copy attached).

In this case, the issue of personal jurisdiction over The Carlyle Group as well as the Plaintiffs' asserted claims against The Carlyle Group turn on the substantive law of piercing the corporate veil.  The Carlyle Group maintains that the Plaintiffs' allegations of ownership and

control are wrong as a matter of irrefutable fact, and that even accepted as true, the bare allegations of ownership and control simply do not meet the pleading requirement under Rule 8. Thus, the claim against The Carlyle Group properly is subject to dismissal under Rule 12(b)(2) and (6).  See *Harris v. Option One Mortg. Corp.*,  261 F.R.D. at 111; see also *Mincey v. World Savings Bank, FSB* , 614 F.Supp.2d 610, 622 (D.S.C. 2008) (granting motion to dismiss where "kitchen sink" allegations of complaint not sufficient state a claim to pierce the corporate veil); *Montague v. Dixie Nat. Life Ins. Co.*, supra ("a formulaic recitation of legal elements or conclusions bereft of facts that would allow the court to conclude that the complaint plausibly states a claim for relief under any conceivably applicable law").

### III.     Plaintiffs cannot pierce the corporate veil to reach The Carlyle Group because it does not hold any ownership interest in HCR ManorCare.

It has been held that personal jurisdiction can be established over a corporation based on the contacts of its subsidiaries if the plaintiff is able to "pierce the corporate veil, " S*ee Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 336-37 (1925); *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 61 (4th Cir.1993).  However, the Plaintiffs' allegations do not establish any of the elements required to pierce the corporate veil under South Carolina or federal constitutional law.

This question of personal jurisdiction over a parent/holding company was first addressed long ago by the Supreme Court in *Cannon Manu. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 335 (1925), wherein the Court affirmed the district court's dismissal of a parent corporation for lack of personal jurisdiction, stating:

> Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely, and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals ... The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were

8

wholly independent corporations.

Because the corporations maintained a real, though formal, separation, the Court held that the activities of the subsidiary could not be imputed to the parent for the purpose of showing that the parent was amenable to the personal jurisdiction of the forum. See discussion in *Samples v. Vanguard Healthcare, LLC*, 2008 WL 4371371 (N.D. Miss. 2008) (copy attached).

As a matter of South Carolina law, it had been stated:

> "[I]t is recognized that a corporation is an entity, separate and distinct from its officers and stockholders, and that its debts are not the individual indebtedness of its stockholders. This is expressed in the presumption that the corporation and its stockholders are separate and distinct. **** [However,] "in an appropriate case and in furtherance of the ends of justice," the corporate veil will be pierced and the corporation and its stockholders "will be treated as identical."

*DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir. 1976).[2]

South Carolina has adopted a two prong test for piercing the corporate veil. As a predicate issue, the test has been discussed in terms of where the substantial ownership of all the stock of a corporation rests in a single individual. And, the test focuses on the reality and not form, with how the corporation operated and the individual owner/defendant's relationship to that operation. *Id.;* see also *Sturkie v. Sifly,* 280 S.C. 453, 457, 313 S.E.2d 316, 318 (Ct.App.1984); *Drury Development Corp. v. Foundation Ins. Co.*, 380 S.C. 97, 668 S.E.2d 798 (2008). The first prong analyzes the shareholder's relationship to the corporation by evaluating eight factors: 1) was the corporation grossly undercapitalized; 2) does the corporation observe corporate formalities; 3)

---

[2]   Although often used interchangeably, the terms "alter ego" and "piercing the corporate veil" are not one and the same. Whereas "alter ego" describes a theory of procedural relief, "piercing the corporate veil" refers to the relief itself. *See* 1 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41.10 (per. ed., rev. vol. 2006). In other words, "[t]he alter ego doctrine is merely a means of piercing the corporate veil." 18 C.J.S. *Corporations* § 23 (2008).

*Drury Development Corp. v. Foundation Ins. Co.*, 380 S.C. 97, 668 S.E.2d 798 (2008).

9

does the corporation pay dividends to all shareholders; 4) is the corporation solvent; 5) how the officers or directors actually function in running the corporation; 6) does the corporation maintain corporate records;  7) has the dominant stockholder siphoned off corporate funds;  and 8) is the corporation used as a mere facade for operations of its dominant stockholders.  The second prong requires the plaintiff to demonstrate that "fundamental unfairness" would result from recognition of the corporate entity. "The essence of the fairness test is simply that an individual businessman cannot be allowed to hide from the normal consequences of carefree entrepreneuring by doing so through a corporate shell." *Drury, id.*

Plaintiffs do not allege and cannot prove that The Carlyle Group exerts "undue control" over Heartland or otherwise circumvents corporate formalities sufficient to ignore the corporate separateness. *Dtex, LLC v. BBVA Bancomer, S.A.*,  405 F.Supp.2d 639, 647 (D.S.C. 2005).  At most, the allegations of the complaint could only establish a shareholder relationship, and such allegations do not state a colorable claim for piercing the alleged corporate veil past Heartland, past the  parent company, HCR ManorCare, Inc. to reach the shareholders of HCR – whether the owner is The Carlyle Group or the Funds.

The Court's opinion in *Builder Mart of America, Inc. v. First Union Corp.*, 349 S.C. 500, 563 S.E.2d 352, 358 (Ct. App. 2002),[3] is compelling on this point:

> For the courts to have personal jurisdiction, Appellant must show that the subsidiary functions as the agent or mere department of the parent-that is, that the subsidiary does all the business which the parent corporation could do if here on its own.  [*Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir.1998).]  Moreover, "*the agency rule ordinarily does not apply to a holding company* inasmuch as the parent could simply use another subsidiary to accomplish the same result."
>
> In making this determination, the courts look at four factors: (1) common ownership, (2) financial independence, (3) degree of selection of executive

---

[3] Overruled on other grounds in *Farmer v. Monsanto*, 353 S.C. 553, 579 S.E.2d 325 (2003).

>personnel and failure to observe corporate formalities, *and* (4) the degree of control over marketing and operational policies. *Jazini* at 185. It is essential that *all four factors be present with sufficient factual specificity* to confer jurisdiction on state courts.

The Plaintiffs' allegations that "The Carlyle Group" - an alleged private equity firm -- owns shares in Heartland or HCR ManorCare are not sufficient to establish those factors. But most significantly, the allegations are rebutted by the affidavits which establish beyond refutation that The Carlyle Group does not hold any ownership interest in HCR Manorcare.

Dismissal is also supported by the reasoning found in *Quarles v. Fuqua Industries, Inc.*, 504 F.2d 1358, 1364 (10th Cir.1974), where it was held that a parent holding company that engaged in diversified corporate investments, but did not have continuous and systematic contacts with the forum state itself, was not subject to personal jurisdiction in the forum state on the basis of the activities of a subsidiary of which the holding company owned stock: "One company's exercise over a second corporation of a controlling influence through stock ownership does not make the second corporation an agent of the first." *See also SGI Air Holdings II LLC. v. Novartis Intern., AG*, 192 F.Supp.2d 1195, 1199 (D.Colo. 2002), where in the court ruled that personal jurisdiction would not be exercised over a holding company:

>The business of a holding company is not to direct the day to day activities of its subsidiaries, but instead to hold the stock of companies, from which it derives profits. The relationship of a holding company and the subsidiaries of which the holding company owns stock is not of a nature to support an agency relationship, or consequently, personal jurisdiction over the holding company or its day-to-day managing company.

The bottom line is that the Funds, not The Carlyle Group, hold ownership interest in HCR ManorCare, but these Funds are not parent companies or holding companies of HCR ManorCare. The reality, as established by the Affidavits, is that they are investment funds managed by The Carlyle Group. No part of any of the reality of the existence and

interrelationship of these companies supports an exercise of personal jurisdiction over The Carlyle Group for the claims asserted by these Plaintiffs in this state.

## Conclusion

WHEREFORE, based on the foregoing, the Defendant The Carlyle Group respectfully requests that the court grant its motions and dismiss the claim against this Defendant.

> HOOD LAW FIRM, LLC
> 172 Meeting Street
> Post Office Box 1508
> Charleston, SC  29402
> Phone: (843) 577-4435
> Facsimile: (843) 722-1630
> Email: Info@hoodlaw.com
>
>
> **s/ Elloree A. Ganes**
> Robert H. Hood (1939)
> Molly H. Craig (6671)
> Elloree A. Ganes (9022)
> Brian E. Johnson (10098)
>
> Attorneys for the Defendant
> The Carlyle Group

**June 25, 2010**
Charleston, South Carolina
J:\docs\20.033\MIO-MTD (2).doc