IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Nathaniel Salley and Joseph Salley, as Personal Representatives of the Estate of Annie Salley, <br><br> Plaintiffs, <br><br> vs. <br><br> Heartland-Charleston of Hanahan, SC, LLC, d/b/a Heartland Healthcare Center – Charleston; HCR Manorcare, Inc.; Manor Care, Inc.; Manor Care of America, Inc.; HCR Manorcare Medical Services of Florida, LLC; The Carlyle Group, <br><br> Defendants. | Civil Action No. 2:10-cv-00791-DCN <br><br><br><br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT THE CARLYLE GROUP'S MOTION TO DISMISS** |

Plaintiffs Nathaniel Salley and Joseph Salley, as Personal Representatives of the Estate of Annie Salley, by and through their undersigned attorneys, hereby oppose Defendant The Carlyle Group's ("Carlyle") Motion to Dismiss (docket no. 15). As set forth below, the allegations in the Complaint are sufficient to state a claim that Carlyle caused or contributed to Annie Salley's death. Those allegations include that Carlyle controlled, or retained the right to control, the budget and profit demands at Heartland, which led to understaffing, inadequate training, and inadequate supervision at Heartland. Additionally, Carlyle's demand to be dismissed now is premature given that no discovery has taken place of Carlyle—due to Carlyle's refusal to respond to any discovery requests while its Motion to Dismiss is pending. Finally, Carlyle has sufficient contacts with South Carolina to convey personal jurisdiction over Carlyle under South Carolina's Long-Arm Statute because Carlyle caused an injury or death in this State by an act or

1

omission outside this State, and derives substantial revenue from services rendered in this State.  Carlyle's Motion to Dismiss accordingly should be denied.

## FACTUAL BACKGROUND

This is a traumatic brain injury case.  Annie Salley was a widow and grandmother of 16 children.  Before retirement, she had worked much of her life as a housekeeper in Charleston's hotels.  Mrs. Salley's doctor described her as a "delightful 72-year old".  Women in Mrs. Salley's family typically live well into their eighties.

**1. Carlyle and ManorCare**

In early December 2008, Mrs. Salley was admitted to Defendants' Heartland facility in Hanahan due to problems with her diabetes. Heartland is part of a mega-conglomerate in the nursing home industry, which at various times goes by names such as Manor Care, Heartland Health Resources, Heartland Hospice Services, ManorCare Health Services, New ManorCare Health Services, and others.  The South Carolina Secretary of State's records show that HCR ManorCare and Heartland regularly form, dissolve, and reform themselves into new corporate entities. Complaint ¶ 4.  At the time of Annie Salley's admission to Heartland, HCR ManorCare recently had been purchased by Carlyle, one of the world's largest private equity firms with more than $84.5 billion under management. Carlyle was and is committed to making HCR ManorCare and Heartland even more profitable. *Id.* ¶¶ 5-6.

Carlyle's business is to buy companies and make them more profitable.  The evidence shows that Carlyle **acquired** ManorCare and Heartland, not that it was a distant shareholder or manager with no input into the company.   For example:

- On October 12, 2007, ManorCare's attorneys represented to the South Carolina Department of Health and Environmental Control (DHEC) that it "recently approved a transaction with affiliates of The Carlyle Group ("Carlyle"), a global private equity firm, to take Manor Care private **through an acquisition of all of the stock of Manor Care**. . . . [A]n entity owned by **Carlyle** and its co-investors through various limited partnerships . . . **will replace the current public shareholders of Manor Care as the sole shareholder of Manor Care** . . . ." Ex. 1 (Nelson Mullins letter, Salley 604, emphasis added).
    - o The diagrams of ownership structure by Carlyle show that the various Carlyle entities in the chain of ownership all had the identical address as Carlyle: 1001 Pennsylvania Avenue, NW, Washington, DC 20004-2505, phone 202-729-5626. *Compare* Ex. 1 at Salley 686 *with* Ex. 2 (The Carlyle Group Worldwide Offices address and phone number).
- On December 21, 2007, The Carlyle Group and Manor Care announced on Carlyle's Web site that the "global private equity firm **The Carlyle Group** has completed its $6.3 billion **acquisition** of Manor Care. Manor Care stockholders will receive $67.00 in cash for each share of common stock owned." Ex. 3 (Carlyle press release; emphasis added). The announcement went on to state that "On October 17, 2007, Manor Care's stockholders approved the **merger agreement** at a special meeting, with more than 99 percent of shares present voting for approval. . . . As a result of this

3

    transaction, Manor Care stock will cease trading on the New York Stock Exchange at market close today, December 21, 2007." *Id.* (emphasis added).

- In November 2009, HCR ManorCare, Inc.'s attorneys submitted documents to the DHEC showing that the Heartland facility in Hanahan is part of the organizational chart of Carlyle entities and current management. Ex. 4 at Salley 575-76 (showing corporate structure from Carlyle to Heartland–Charleston of Hanahan, SC, LLC).

## 2. Annie Salley's falls at Carlyle's Heartland facility

While Annie Salley was at Heartland, Heartland's employees repeatedly did not provide adequate assistance to help her get to the bathroom (which she needed due to arthritis and problems with her knee). As a result, Mrs. Salley at times would wet or soil herself because she could not make it to the bathroom in time. This was deeply humiliating to Mrs. Salley. Complaint ¶ 8.

On the evening of December 11, 2008, Mrs. Salley was attempting, again, to make it to the bathroom on her own, because Heartland employees were not helping. She fell in the bathroom, severely hitting her head on a bathroom fixture. *Id.* ¶ 9.

Heartland's employees took no significant steps to address Mrs. Salley's injuries. Other than filling out some forms, they did no real examination or investigation. No head scans were ordered. In the days that followed, Heartland's employees wrote that no referral was needed for Mrs. Salley. *Id.* ¶ 10.

Following this fall, Mrs. Salley's condition deteriorated. She would, at various times, be non-responsive, thrash around, be confused, and vomit. Still, no referral was made and no head scans were done. Heartland employees continued to administer blood

thinners, such as aspirin, to Mrs. Salley. The evidence shows that Mrs. Salley fell a number of other times at Heartland, but that Heartland's employees did not document those falls or take any significant action. *Id.* ¶ 11.

In January 2009, Mrs. Salley was admitted to MUSC again. A brain scan was done, which showed severe bleeding in her brain. The blood was several weeks old, and had pushed Mrs. Salley's brain to one side. Surgeons at MUSC attempted a number of painful, invasive procedures to attempt to relieve the pressure and damage caused by the blood. The procedures did not work. On February 1, 2009, Mrs. Salley was pronounced dead. The cause of death is listed as subdural hematoma. *Id.* ¶¶ 14-18.

Plaintiffs' allegations against Defendants include that the facility was understaffed and that the staff were not trained or supervised properly due to (among other things) limited budgets and resources dictated by the parent companies and owners. *Id.* ¶¶ 84, 104 (summarizing allegations, including inadequate staffing and training). Carlyle is among those entities that own or control Heartland and its parent companies. *Id.* ¶¶ 26-28, 79.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b), a motion to dismiss should not be granted unless it appears certain that the plaintiffs can prove no set of facts which would support their claim and would entitle them to relief. In considering a motion to dismiss, the Court should accept as true all well-pleaded allegations and should view the Complaint in a light most favorable to the plaintiffs. *See Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted).

# ARGUMENT

**1. Plaintiffs have pled sufficient allegations to state a claim against Carlyle under Rule 12(b)(6).**

Carlyle argues that there is no set of facts under which it could be liable for actions at its Heartland facility, and therefore it should be dismissed immediately and without any discovery. Plaintiffs have pled that Carlyle caused or contributed to Annie Salley's death by, among other things, causing or controlling its Heartland facility in such a way that it was understaffed, that the staff was inadequately trained, and that the staff was inadequately supervised. *See, e.g.*, Complaint ¶ 84(l)-(p) (allegations of inadequate staffing, training, and supervision); *id.* ¶ 79 ("The level and type of care at Heartland, including without limitation staffing, budgets, procedures, training, and other important matters, are set or controlled by Heartland's corporate owners, including the Defendants."); *see also id.* ¶¶ 8-10, 12-13, 26, 42-46, 52, 79, 84, 104 (allegations imputed to corporate owners).

The United States Supreme Court has held that in certain contexts "the parent corporation is [itself] responsible for the wrongs committed by its agents in the course of its business." *United States v. Bestfoods*, 524 U.S. 51, 64 (1998) (internal quotations omitted). Numerous cases establish that a company or shareholder that controls—or retains the right to control—a nursing home facility may be held liable for negligence at the facility, both directly and vicariously. *Cf. Canavan v. National Healthcare Corp.*, 889 S.2d 825, 827 (Fla. Ct. App. 2004) (a principal and sole shareholder may be directly liable, without piercing the corporate veil, for the shareholder's negligence in ignoring problems of under-staffing in the nursing home while cutting the staffing budget and elevating profit over patient care); *Despain v. Avante Group, Inc.*, 900 So. 2d 637, 645

6

(Fla. Ct. App. 2005) (inadequate staffing, linked to inadequate care, may be the basis for indirect (vicarious) liability for punitive damages); *Montgomery Health Care Facility, Inc. v. Ballard*, 565 So.2d 221, 225 (Ala. 1990) (an issue is whether the defendant shareholder corporation controlled or retained the right to control the day-to-day operations of the facility); *Larrimore v. Hospital Corp. of America*, 514 So.2d 840, 845 (Ala. 1987) (a parent company may be held liable for malpractice at facility because it controlled the day-to-day operations, and therefore summary judgment in favor of the parent company should be denied as to those facilities).[1]

Here, the Complaint alleges that Carlyle controlled or retained the right to control HCR ManorCare and its Heartland facility. *See* Complaint ¶¶ 26(a), 28, 79. The Complaint alleges (among other things) that Carlyle's demand for even-higher profits led to restricted budgets in the HCR ManorCare companies and facilities it controlled. At Heartland, this caused or contributed to inadequate staffing, training, and supervision, which caused or contributed to Mrs. Salley's inadequate care, fall, and death. *See id.* ¶¶ 5-6, 79, 84, 104. Taking the well-pled allegations in a light favorable to the Plaintiffs, this is sufficient to state a claim under Rule 12(b)(6).

---

[1] *See also Beverly Enterprises—Florida, Inc. v. Spilman*, 661 So.2d 867, 873 (Fla. Ct. App. 1995) (jury verdict affirmed because, *inter alia*, the controlling entity cannot evade responsibility under a theory of corporate liability by closing its eyes to the events at the facility); *Young Estate of Middlebkauf v. Manor Care Health Services, Inc.*, 2004 WL 953869 (E.D. Pa. Apr. 20, 2004) (denying motion to dismiss because, *inter alia*, for purposes of Rule 12(b)(6) motion, it is conceivable that the nursing home's related entities could come within the ambit of the corporate negligence doctrine) (copy attached as Ex. 5).

**2. Carlyle's Motion to Dismiss is based on genuine issues of material fact that are in dispute.**

Carlyle's Motion demands that this Court dismiss Carlyle immediately because, it claims, Carlyle does not currently hold any ownership in HCR ManorCare. *See* Motion to Dismiss at 8.  In support of this disputed fact, Carlyle submits the affidavits of a Carlyle attorney (Jeffrey W. Ferguson) and Risk Management officer (Kathryn S. Hoops). *See* Docket nos. 15-2, 15-3. Summarized, these witnesses claim that Carlyle does not (presently) own any shares of HCR ManorCare, Inc., but instead exercises control over those shares through subsidiaries or Funds. The exact relationship of those Funds to Carlyle is not explained in any useful detail. The Hoops affidavit conclusively pronounces that "Carlyle is neither the principal nor the agent of any of the other Defendants named in this action." *See* Hoops Aff. ¶ 12, docket no. 15-3.

These bald assertions of fact are hotly disputed in this action. There is significant evidence that, in December 2007, Carlyle **acquired** HCR ManorCare and all its stock, assets and subsidiaries. *See* Ex. 1 (Nelson Mullins letter, Salley 604: "a transaction with affiliates of The Carlyle Group ('Carlyle'), a global private equity firm, to take Manor Care private **through an acquisition of all of the stock of Manor Care**. . . . **[A]n entity owned by Carlyle** and its co-investors through various limited partnerships . . . **will replace the current public shareholders of Manor Care as the sole shareholder of Manor Care** . . . ." (emphasis added)); Ex. 3 (Carlyle press release: "global private equity firm **The Carlyle Group has completed its $6.3 billion acquisition** of Manor Care. Manor Care stockholders will receive $67.00 in cash for each share of common stock owned." (emphasis added)). Documents that HCR ManorCare, Inc.'s attorneys submitted to government entities show that the Heartland facility in Hanahan is, or at

8

relevant times was, part of the organizational structure of Carlyle entities and management. Ex. 4 at Salley 575-76 (showing corporate structure from Carlyle to Heartland–Charleston of Hanahan, SC, LLC). This is different from Carlyle's representations in its Motion to Dismiss that it is but a distant stock adviser to ManorCare and Heartland. At the least, this evidence raises significant questions of material fact as to (a) the exact relationship of Carlyle to HCR ManorCare and its Heartland facility at the times relevant to this litigation, and (b) the budgetary and other influence Carlyle exercised—or had the ability to exercise—over ManorCare and Heartland at the times relevant to this litigation. These disputed issues and questions of fact are sufficient to survive a motion to dismiss under Rule 12(b) (and summary judgment, under Rule 56).

**3. Carlyle's motion is premature.**

Carlyle's demand to be dismissed now is premature. Thus-far in this action, Carlyle has refused to answer any discovery[2] and has failed to answer the Complaint (having filed its Motion to Dismiss instead).

Yet in support of its Motion to Dismiss, Carlyle submits employee affidavits making complex assertions of corporate ownership and control, which it acknowledges are the "most significant[ ]" part of its argument. *See* Motion to Dismiss at 11. In order to rebut these allegations, Plaintiffs should have the opportunity explore through discovery the exact relationship between Carlyle, HCR ManorCare, and Heartland at the times relevant to this litigation, including the scope of influence and control that Carlyle held

---

[2] Plaintiffs served interrogatories and requests for production on Carlyle with the Complaint, which have not been answered. Plaintiffs obtained the evidence of Carlyle's acquisition of Heartland discussed in this Opposition (Exs. 1-4) through Freedom of Information (FOIA) requests to government agencies, and by research of publically available documents.

9

over budgetary and other issues at Heartland. That discovery is particularly important given the significant differences between the depictions of Carlyle's control over Heartland in Carlyle's affidavits (Docket nos. 15-2, 15-3) and Plaintiffs' evidence (Exs. 1-4). The issues of Carlyle's involvement in Heartland—and its influence on Heartland's budget, staffing, training, and other such matters—are more appropriate for a motion at trial for judgment as a matter of law (Rule 50) or, perhaps, for a motion for summary judgment after discovery has been completed (Rule 56).

4. **Plaintiffs have pled and produced sufficient facts to establish personal jurisdiction over Carlyle under Rule 12(b)(2).**

Carlyle also demands to be dismissed now because, it claims, this Court does not have personal jurisdiction over Carlyle. *See* Motion to Dismiss at 5. "When the court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff needs only prove a prima facie case of personal jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir. 1989).

South Carolina's Long-Arm Statute authorizes this Court to exercise personal jurisdiction over Carlyle. That statute allows such jurisdiction over, *inter alia*:

> [A] person who acts directly or by an agent as to a cause of action arising from the person's:
> (1) transacting any business in this State;
> (2) contracting to supply services or things in the State;
> (3) commission of a tortious act in whole or in part in this State;
> (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
> (5) having an interest in, using, or possessing real property in this State; . . . .

S.C. Code § 36-2-803(A). Plaintiffs' allegations and submitted evidence fall directly under these provisions. Plaintiffs allege that Carlyle has an ownership interest in, or an

agency relationship with, Heartland in Hanahan, South Carolina, and therefore is "transacting any business in this State" or "contracting to supply services or things in the State" under the Long-Arm Statute. *See, e.g.*, Complaint ¶¶ 26, 28. This is supported by the evidence that Carlyle acquired Heartland and exercises control over Heartland through profit-taking and budgetary restrictions. *See* Exs. 1-4. These allegations are further supported by the fact that Carlyle and ManorCare's attorneys have made submissions to DHEC on those corporations' behalf for business conducted within South Carolina. *See* Exs. 1, 4. Those submissions show that Carlyle and ManorCare own numerous other facilities within South Carolina, including West Ashley Rehabilitation and Nursing Center; Columbia Rehabilitation and Nursing Center; Oakmont East— Greenville, SC; Oakmont of Union, SC; and Lexington Rehabilitation and Nursing Center. *See* Ex. 4 at Salley 575-576 (organization chart).

Plaintiffs further allege that Carlyle's profit-taking and budgetary restrictions proximately caused Annie Salley's fall and death, and therefore caused "tortious injury or death in this State by an act or omission outside this State if [Carlyle] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State." S.C. Code § 36-2-803(A)(4). Owning or deriving revenue from the Heartland facility in Charleston certainly qualifies as deriving "substantial revenue" from services rendered in this State. Again, the extent of that revenue may be explored through discovery and the normal litigation process.

Although some of Plaintiffs' evidence conflicts with the self-serving affidavits submitted by Carlyle, the law is clear that in such instances the Court is to draw an

11

inference in favor of exercising jurisdiction. *See Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 722 (D. S.C. 2007) ("In determining the existence of minimum contacts, the court is mindful that it must draw all reasonable inferences from both parties' pleadings, even if they conflict, in [the plaintiff's] favor."); *Meier ex. rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) ("[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff"); *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994) (on a motion to dismiss, the court is charged with "taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff"); *Precept Med. Products, Inc., v. Klus*, 282 F. Supp. 2d 381, 385 (W.D.N.C. 2003) ("for the purposes of a Rule 12(b)(2) motion, the Court will accept the Plaintiff's version of disputed facts"). There accordingly are sufficient minimum contacts to connect Carlyle to South Carolina, and fair play and substantial justice weigh in favor of litigating Carlyle's actions and omissions toward Annie Salley in South Carolina, where the injury occurred.

## CONCLUSION

For these reasons, The Carlyle Group's Motion to Dismiss should be denied.

                                Respectfully submitted,

                                GREEN FORD & WALLACE LLC

                                s/ Ian Ford_____
                                Ian S. Ford
                                      S.C. Fed. Bar 9057
                                      Ian.Ford@GreenFordWallace.com
                                Dwayne M. Green
                                      S.C. Fed. Bar 9559
                                      Dwayne.Green@GreenFordWallace.com

        602 Rutledge Avenue
        Charleston, SC 29403
        (P.O. Box 20009, Charleston, SC 29413)
        Tele.: (843) 266-2626
        Fax: (843) 266-2627
        Web:  www.greenfordwallace.com

July 6, 2010
Charleston, South Carolina

INDEX TO EXHIBITS

Plaintiffs' Opposition to The Carlyle Group's Motion to Dismiss

Exhibit 1:  Nelson Mullins letter to DHEC dated October 17, 2007 (Bates numbers Salley 604-606, 686.

Exhibit 2:  Print-out from The Carlyle Group's Web site showing headquarter address.

Exhibit 3:  Press release from The Carlyle Group and ManorCare dated December 21, 2007.

Exhibit 4:  Parker Poe letter to DHEC dated November 3, 2009 (Bates numbers Salley 569-576.

Exhibit 5:  *Young v. Manor Care Health Services, Inc*., 2004 WL 953869 (E.D. Pa. Apr. 20, 2004) (unpublished opinion)