IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| NATHANIEL SALLEY AND JOSEPH SALLEY, AS PERSONAL REPRESENTATIVES OF THE ESTATE OF ANNIE SALLEY, | ) ) ) ) ) | Civil No. 2:10-cv-00791 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| HEARTLAND-CHARLESTON OF HANAHAN, SC, LLC, D/B/A CENTER - CHARLESTON; HCR MANORCARE, INC.; MANOR CARE, INC.; MANOR CARE OF AMERICA, INC.; HCR MANORCARE MEDICAL SERVICES OF FLORIDA, LLC; THE CARYLE GROUP, | ) ) ) ) ) ) ) ) ) | **ORDER** |
| Defendants. | ) ) | |

This matter is before the court on defendant The Caryle Group's (Carlyle's) motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons set forth below, the court grants defendant's motion to dismiss for lack of personal jurisdiction.

**I. PROCEDURAL BACKGROUND**

On February 19, 2010, plaintiffs, Nathaniel Salley and Joseph Salley, as the personal representatives of the estate of Annie Salley (Mrs. Salley), sued defendants in state court regarding defendants' care for and the subsequent death of Mrs. Salley for (1) negligence and negligence per se; (2) wrongful death; (3) survival right of action; (4) breach of fiduciary duty and misrepresentation; and (5) breach of contract.

1

Plaintiffs sued: (1) Heartland-Charleston of Hanahan, SC, LLC (Heartland), the licensee for the facility where Mrs. Salley stayed; (2) Manor Care, Inc., previously Manor Care of America, Inc.; (3) HCR ManorCare, Inc.; (4) HCR ManorCare Medical Services of Florida, LLC; and (5) The Carlyle Group (Carlyle). Resp. First Interrog. 2-3. Heartland is owned by HCR III Healthcare, LLC, which is owned by HCR II Healthcare, LLC. Reply Pls.' Mem. Opp. 2-3; Pls.' Opp. Def. Mot. Dismiss Ex. B. HCR Healthcare, LLC owns HCR II Healthcare, LLC. Id. Manor Care, Inc. owns HCR Healthcare, LLC, and HCR ManorCare, Inc. owns Manor Care, Inc. Id. Plaintiffs allege that Carlyle owns HCR ManorCare, Inc. and is the sixth-tier parent company to the facility where Mrs. Salley resided. Id.; Pls.' Opp. Def. Mot. Dismiss 2. This motion to dismiss is brought solely by Carlyle.

Defendants removed this case to federal court on March 29, 2010, based on diversity jurisdiction, and Carlyle consented to removal. Plaintiffs did not move to remand. Plaintiffs submitted the first set of interrogatories on February 16, 2010. Carlyle refused to respond to interrogatories until the resolution of its motion to dismiss.

## II. FACTUAL BACKGROUND

Mrs. Salley resided at Heartland nursing home from December 2, 2008 until January 1, 2009. Defs.' Answers Local R. 26.03 1. On December 8, 2008, she allegedly fell at Heartland while attempting to make her way to the restroom. Id. On January 25, 2009, she was hospitalized at the Medical University of South Carolina (MUSC). Id. Plaintiffs claim that Heartland employees: (1) failed to adequately assist Mrs. Salley in general, and specifically, in going to the bathroom, which

resulted in Mrs. Salley's fall and head injury; (2) failed to sufficiently examine and treat Mrs. Salley after the fall; (3) failed to provide her with a head scan though she exhibited signs of head trauma; and (4) continued to give her blood thinners. Comp. ¶¶ 8-12. After defendants discharged Mrs. Salley from Heartland, MUSC found that Mrs. Salley's brain had been severely bleeding, and a head scan showed that a "great deal of old blood" had pushed Mrs. Salley's brain to one side. Comp. ¶¶ 14-15. Mrs. Salley died of a subdural hematoma on February 1, 2009. Comp. ¶ 18.

Carlyle's alleged connection to this suit is that, as the sole shareholder of HCR ManorCare, Inc., a parent company of Heartland, Carlyle controlled or retained the right to control Heartland's budget. Allegedly, lack of funds or budgetary concerns caused quantitative and qualitative inadequacies in the staff and nurses at Heartland, and these inadequacies caused Mrs. Salley's death. Carlyle contends that it has no ownership interest whatsoever in HCR ManorCare, Inc., rather it "manages funds," which own the HCR ManorCare, Inc. stock.

### III.   DISCUSSION

####   a.  Standard for 12(b)(2) Motions

A district court may exercise personal jurisdiction "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993). The Supreme Court of South Carolina has interpreted South Carolina's long-arm statute, S.C. Code Ann. § 36-2-803, to extend to the outer limits of Fourteenth Amendment due process. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002). "Because South Carolina treats its long-arm statute as

3

coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." Cockrell v. Hillerich & Bradsby Co., 611 S.E.2d 505, 508 (S.C. 2005).

The Due Process Clause is satisfied for personal jurisdiction purposes if a defendant has "purposefully availed itself of the privilege of conducting business in the forum state" by establishing sufficient "minimum contacts" "such that maintenance of the suit does not offend traditional notions of "fair play and substantial justice." Burger King v. Rudzewicz, 471 U.S. 462, 475-76 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). A defendant has sufficient minimum contacts with a state when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297. Factors courts have considered to resolve whether a defendant has "purposefully availed" itself of the privilege of conducting business in the forum state include, but are not limited to: (1) whether defendant maintains offices or agents in the forum state, see McGee v. Int'l Life Ins. Co., 355 U.S. 220, 221 (1957); (2) whether defendant owns property in the forum state, see Base Metal Trading, Ltd. v. OJSC, 283 F.3d 208, 213 (4th Cir. 2002); (3) whether defendant reached into the forum state to solicit or initiate business, see McGee, 355 U.S. at 221; Burger King, 471 U.S. at 475-76; (4) whether defendant deliberately engaged in significant or long-term business activities in the forum state, see Burger King, 471 U.S. at 475-76, 481; (5) whether the parties contractually agreed that the law of the forum state would govern disputes, see id., 471 U.S. at 481-82,; (6) whether

defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, see Hirschkop & Grad, P.C. v. Robinson, 757 F.2d 1499, 1503 (4th Cir. 1985); (7) the nature, quality, and extent of the parties' communications about the business being transacted, see English & Smith v. Metzger, 901 F.2d 36, 39 (4th Cir. 1990); and (8) whether the performance of contractual duties was to occur within the forum, see Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 314 (4th Cir. 1982). Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009). "Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate for presence and thus render the exercise of sovereignty just.'" Id. at 277-78 (quoting ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997)).

When a district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, plaintiffs must prove a *prima facie* case of personal jurisdiction. See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). To determine whether plaintiffs have satisfied this burden, the court may consider both defendant's and plaintiffs' "pleadings, affidavits, and other supporting documents presented to the court" and must construe them "in the light most favorable to plaintiff[s], drawing all inferences[,] resolving all factual disputes in [their] favor," and "assuming [plaintiffs'] credibility." Masselli & Lane, PC v. Miller & Schuh, PA, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000); Mylan Labs, 2 F.3d at 62; Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). This court, however, need

5

not "credit conclusory allegations or draw farfetched inferences." Massellli, 2000 WL 691100, at *1 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)). Plaintiffs must also base their claim for personal jurisdiction "on specific facts set forth in the record." Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc., 784 F. Supp. 306, 310 (D.S.C. 1992).

Plaintiffs allege that Carlyle has "minimum contacts" with South Carolina because Carlyle "controlled, or retained the right to control, the budget and profit demands at Heartland, which led to understaffing, inadequate training, and inadequate supervision at Heartland." Pls.' Opp. Mot. Dismiss 1. Plaintiffs claim that this satisfies subsections (1), (2), and (4) of the South Carolina long-arm statute, S.C. Code Ann. § 36-2-803(A):

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:
> (1) transacting any business in this State;
> (2) contracting to supply services or things in the State;
> (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State[.]

There are two ways by which foreign parent corporations can be liable for the actions of in-state subsidiaries: (1) the parent corporation's minimum contacts are "related to the litigation," Builder Mart of Am., Inc. v. First Union Corp., 563 S.E.2d 352, 358 (S.C. Ct. App. 2002) (overruled on separate grounds in Farmer v. Monsanto Corp., 579 S.E.2d 325 (S.C. 2003)) (quoting Burnham v. Super. Ct. of Cal., 495 U.S. 604, 620 (1990)) or (2) by "piercing the corporate veil," Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc., 463 F. Supp. 2d 544, 547 (D.S.C. 2006) (citing Cannon Mfg.

6

Co. v. Cudahy Packing Co., 267 U.S. 333, 336-37 (1925); Builder Mart, 563 S.E.2d at 358 (plaintiff must show that "the subsidiary functions as the agent or mere department of the parent.").

   b.  **Piercing the Corporate Veil**

In order to establish personal jurisdiction under the veil piercing doctrine, plaintiffs must establish a prima facie case that: (1) the corporation and its stockholder failed to observe corporate formalities and (2) recognizing the corporate veil would create "fundamental unfairness." Multimedia Pub. of S.C., Inc. v. Mullins, 431 S.E.2d 569, 571 (S.C. 1993). Piercing the corporate veil is only reluctantly allowed. Baker v. Equitable Leasing Corp., 271 S.E.2d 596, 600 (S.C. 1980). Factors to be considered under the first prong include: (1) whether the corporation was grossly undercapitalized for the purposes of the corporate undertaking; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation; (5) siphoning of funds of the corporation by the dominate shareholder; (6) non-functioning of other officers or directors; (7) absence of corporate records; and (8) the corporation serving as a façade for the operations of the dominant shareholder. Hunting v. Elders, 579 S.E.2d 803, 807 (S.C. Ct. App. 2004); see also Jones ex rel. Jones v. Enterprise Leasing Co. Southeast, 678 S.E.2d 819, 824 (S.C. Ct. App. 2009) (discussing the methods for achieving alter ego status).

Plaintiffs claim that Carlyle wanted to make Heartland more profitable, and thus, controlled or maintained control of the budget, which lead to a reduction in the quality and quantity of staff at Heartland. Pls.' Opp. Mot. Dismiss 2. Even if this

7

allegation was sufficient to demonstrate a prima facie case for failure to observe corporate formalities, which it almost certainly is not, these are merely "conclusory allegations" not supported by "specific facts." Plaintiffs' factual allegations revolve around Carlyle's alleged ownership of HCR ManorCare, Inc. stock, but stock ownership is insufficient to confer personal jurisdiction.[1] Harris v. Deere & Co., 223 F.2d 161, 162 (4th Cir. 1955) (holding that personal jurisdiction was inappropriate in a tort case for a parent corporation, who maintained corporate formalities of its wholly-owned domestic subsidiary) (citing Cannon Manu. Co. v. Cudahay Packing Co., 267 U.S. 333, 335 (1925) (finding that a foreign company that was the sole stockholder, exerted control both commercially and financially, but respected all the corporate formalities could not be subject to veil piercing for personal jurisdiction for a breach of contract claim)). See e.g., Harris v. Option One Mortg. Corp., 261 F.R.D. 98, 110 (D.S.C. 2009) (refusing to pierce the corporate veil to allow plaintiffs to sue a fifth-tier parent company when some of the factors above were not satisfied). This court is not required to draw "farfetched inferences," and thus finds that plaintiffs failed to make a prima facie case to pierce the corporate veil.

   **c. Control of the Budget**

Plaintiffs' other argument is that Carlyle tortiously caused a death in South Carolina by acts or omissions outside the state while deriving substantial revenue from services performed within South Carolina. Pls.' Opp. Mot. Dismiss 10-11. Since the South Carolina long-arm statute is construed to reach the limits of the due

---

[1] Stock ownership is highly contested by Carlyle, Mot. Dismiss 8, Aff. Ferguson 2-3, but the court finds it unnecessary to address this matter, as plaintiffs' claims are insufficient even if Carlyle owned 100% of HCR ManorCare, Inc. stock.

process clause, this section will determine whether any of Carlyle's contacts are sufficient to support minimum contacts without piercing the corporate veil.

Plaintiffs allege that Carlyle's in-state activities include "ownership interest in" or "an agency relationship with" Heartland and control or retention of control of the Heartland budget. Pls.' Opp. Mot. Dismiss 11. Plaintiffs support the ownership claim by asserting that Carlyle acquired all of the stock of HCR ManorCare, Inc., as discussed above. Id. at 8. "The mere acquisition and control of a domestic subsidiary's capital stock," however, "does not subject the foreign parent to the jurisdiction of that State's courts." Yarborough & Co. v. Schoolfield Furniture Indus., Inc., 268 S.E.2d 42, 44 (S.C. 1980) (cited for this proposition in Gray v. Riso Kagaku Corp., No. 95-1741, 1996 WL 181488, at *3 (4th Cir. April 17, 1996)). "This rule applies even where the parent was organized for the sole purpose of acquiring and holding the domestic subsidiary's stock." Id. at 44 n.1.

Retention of control of a budget is also insufficient to support minimum contacts. The South Carolina courts look to the substance of whether a foreign corporation has utilized its power to purposefully act within the state, not whether the foreign corporation could have acted in the state. See Builder Mart, 563 S.E.2d at 355 ("Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another."). Plaintiffs have not alleged specific facts that support a claim that Carlyle actually did control the budget of Heartland, and it would be a far stretch for the court infer this fact based solely on alleged ownership of a sixth-tier subsidiary. Plaintiffs also provided letters allegedly sent by attorneys representing Carlyle to South Carolina administrative bodies notifying the proper

9

authorities of a change of ownership.  See e.g., Pls.' Ex. DHEC Letter 1.  Fulfillment of paperwork to satisfy state regulation is insufficient to establish minimum contacts, however.  Builder Mart, 563 S.E.2d at 355 (finding that a holding company's registration with the South Carolina Board of Financial Institutions and designation of an agent for service of process was insufficient to establish personal jurisdiction). Even an "application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight."  Id. (citing Ratliff v. Cooper Labs., Inc., 444 F.2d 745, 748 (4th Cir. 1971)).

Defendant's alleged contacts fail to satisfy the threshold requirement that would allow it to serve as a "surrogate for presence."  ESAB Group, Inc., 126 F.3d at 623.  Plaintiffs have failed to make a prima facie case that Carlyle purposefully availed itself of the forum state, and it would be contrary to notions of "fair play and substantial justice" to require Carlyle to be "haled" into this court.  Int'l Shoe, 326 U.S. at 319.

### d.  Maturity of 12(b)(2) Motion Prior to Discovery

Plaintiffs argue that a 12(b)(2) motion to dismiss is premature at this time because Carlyle has refused to participate in discovery.  As discussed in the standard section, courts need not grant discovery for 12(b)(2) motions to dismiss and may decide the question based solely on motion papers and permissible accompanying evidence.  See supra § II(a); Combs, 886 F.2d at 676; Tuttle Dozer Works, 463 F.Supp.2d at 546.[2]

---

[2] Furthermore, this motion could likely have been decided on 12(b)(6) grounds, but since personal jurisdiction is lacking, the court is not required to address those arguments.

## IV. CONCLUSION

For the foregoing reasons, this court **GRANTS** defendant Carlyle's motion to dismiss for lack of personal jurisdiction.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
CHIEF UNITED STATES DISTRICT JUDGE**

**December 10, 2010
Charleston, South Carolina**