IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| NATHANIEL SALLEY AND JOSEPH SALLEY, AS PERSONAL REPRESENTATIVES OF THE ESTATE OF ANNIE SALLEY, | ) ) ) ) ) | Civil No. 2:10-cv-00791 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| HEARTLAND-CHARLESTON OF HANAHAN, SC, LLC, D/B/A CENTER - CHARLESTON; HCR MANORCARE, INC.; MANOR CARE, INC.; MANOR CARE OF AMERICA, INC.; HCR MANORCARE MEDICAL SERVICES OF FLORIDA, LLC; THE CARYLE GROUP, | ) ) ) ) ) ) ) ) | **ORDER** |
| Defendants. | ) ) | |

This matter is before the court on defendants' motion for summary judgment. For the reasons set forth below, the court grants defendants' motion for summary judgment for all claims against Manor Care, Inc. and HCR ManorCare, Inc.. The court also grants summary judgment to Heartland-Charleston of Hanahan, SC, LLC ("Heartland") on plaintiffs' professional malpractice and negligence per se claims and their request for punitive damages but denies summary judgment on plaintiffs' breach of contract and alternative negligence claims. Plaintiffs have agreed to dismiss their breach of fiduciary duty claim and all claims against HCR ManorCare Medical Services of Florida, LLC.

1

## I. PROCEDURAL BACKGROUND

On February 19, 2010, plaintiffs, Nathaniel Salley and Joseph Salley, as the personal representatives of the estate of Annie Salley ("Mrs. Salley"), sued defendants in state court as a result of defendants' care for and the subsequent death of Mrs. Salley. Plaintiffs asserted the following causes of action: (1) negligence and negligence per se; (2) wrongful death; (3) survival right of action; (4) breach of fiduciary duty and misrepresentation; and (5) breach of contract. Defendants removed this case to federal court on March 29, 2010, based on diversity jurisdiction. This court dismissed all claims against The Carlyle Group for lack of personal jurisdiction on December 10, 2010.

## II. FACTUAL ALLEGATIONS

Mrs. Salley was a resident of Heartland nursing home from December 2, 2008 until January 1, 2009. Plaintiffs contend that upon admission, Heartland was informed that Mrs. Salley was a fall risk and that her physical condition required assistance in toileting. Heartland nurses' records also indicate that Mrs. Salley required "extensive assistance" in toileting. On December 11, 2008, she fell while alone in her restroom at Heartland. Defendants were supposed to assist Mrs. Salley with toileting, feeding, transferring, and with her mobility. On days both before and after Mrs. Salley's fall, Heartland Assisted Daily Living ("ADL") records fail to indicate that assistance was given to Mrs. Salley in some of these areas.

On January 25, 2009, Mrs. Salley was hospitalized at the Medical University of South Carolina ("MUSC"). She died of a subdural hematoma on February 1, 2009.

MUSC neurologist Dr. Ian Johnson treated Mrs. Salley and believes that the subdural hematoma resulted from her fall at Heartland.

### III.   STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by pointing out that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.  The nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Evidence should be viewed in the light most favorable to the nonmoving party and all inferences drawn in its favor.  Id. at 255.  However, a mere "scintilla" of evidence will not preclude summary judgment.  Id. at 252.  Finally, under the recently promulgated amendments to Rule 56, the court need not consider any evidence that is not cited to by the parties.

### IV.   DISCUSSION

**A.  Negligence Claims**

Plaintiffs have failed to provide sufficient evidence regarding the standard of care required to make out a professional negligence claim.  See David v. McLeod

3

Reg. Med. Cntr., 626 S.E.2d 1, 3 (S.C. 2006); Jones v. Owings, 456 S.E.2d 371, 374-75 (S.C. 1995); Pederson v. Gould, 341 S.E.2d 633, 634 (S.C. 1986).  In South Carolina, a professional commits malpractice by failing to "exercis[e] that degree of skill and learning that is ordinarily possessed and exercised by members of the profession in good standing acting in the same or similar circumstances." David, 626 S.E.2d at 3.  A plaintiff alleging malpractice must provide evidence showing "(1) the generally recognized and accepted practices and procedures that would be followed by average, competent practitioners in the defendants' field . . . under the same or similar circumstances, . . . (2) that the defendants departed from the recognized and generally accepted standards," and (3) "that the defendants' departure from such generally recognized practices and procedures was the proximate cause of the plaintiff's alleged injuries and damages." Id. at 4.  The South Carolina Supreme Court requires the establishment of both the first and second requirement by expert testimony "unless the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants." Id.

     Plaintiffs have failed to provide evidence of the first requirement and instead rest on an expert's bald assertion that the standard of care was breached, see Seignious Aff. ¶8, thus conflating the first and second requirement.  Viewed in the light most favorable to plaintiffs, they have failed to provide factual support for the requirements of a professional negligence claim, however, plaintiffs have supported their complaint with sufficient facts for their alternative negligence claims to survive.

     In a negligence action, plaintiff must show:  (1) defendant owed a duty of care to plaintiff; (2) defendant breached the duty by negligence act or omission; (3)

4

defendant's breach was the actual and proximate cause of plaintiff's injury; and (4) plaintiff suffered an injury or damages. Madison v. Babcock Cntr., Inc., 638 S.E.2d 650, 656 (S.C. 2006) (finding that a private residential center owed a duty of care to a mentally retarded patient which included protecting her from harm). "Under South Carolina common law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." Id. There are, however, "five exceptions to this rule: (1) where the defendant has a special relationship to the victim; (2) where the defendant has a special relationship to the injurer; (3) where the defendant voluntarily undertakes a duty; (4) where the defendant negligently or intentionally creates the risk; and (5) where a statute imposes a duty on the defendant." Id. (citing Faile v. S.C. Dept. of Juvenile Justice, 566 S.E.2d 536, 546 (S.C. 2002)). In Madison, the South Carolina Supreme Court also found that the Restatement Second of Torts §323-24 established an applicable duty of care. As in Madison, Heartland's relationship with Mrs. Salley potentially falls under the first, third, fourth, and fifth exceptions to Faile.[1] See id. at 657. Furthermore, in Flinn v. Crittenden, the South Carolina Court of Appeals agreed with a Louisiana court finding that while "[a] nursing home is not the insurer of the safety of its patients," "[t]he nursing home does have a duty to provide a reasonable standard of care, taking into consideration the patient's mental and physical condition." 339 S.E.2d 138, 139 (S.C. Ct. App. 1985).

---

[1] Babcock Center had a special relationship with Appellant because she was a client with special needs and disabilities admitted for care and treatment at the center. Babcock Center voluntarily undertook the duty of supervising and caring for Appellant as provided in its contractual relationship with Department. Babcock Center allegedly acted negligently in creating the risk of injury to Appellant by not properly supervising her…. Furthermore, the center had a statutory duty to exercise reasonable care in supervising Appellant. Madison, 638 S.E.2d at 657.

5

Plaintiffs have sufficiently demonstrated that there is a genuine issue of material fact regarding whether there was a relationship sufficient to establish a general duty of care. At this stage of litigation, plaintiffs' evidence, viewed in the light most favorable to them, demonstrates that there is a genuine issue of material fact regarding whether defendants owed a duty of care to Mrs. Salley and whether they breached that duty. There are also genuine issues of material fact concerning causation based on defendants' records and the testimony of both doctors and nurses.

### B. Negligence Per Se

"Negligence per se is negligence arising from a defendant's violation of a statute." Wogan v. Kunze, 623 S.E.2d 107, 117-18 (S.C. Ct. App. 2005). A statute must permit a private cause of action in order for plaintiffs to maintain a civil suit. "In determining whether a statute creates a private cause of action [in South Carolina], the main factor is legislative intent." Doe v. Marion, 645 S.E.2d 245, 248 (S.C. 2007) (finding that the statute for reporting child abuse does not support a private cause of action for negligence per se against a doctor).

> The legislative intent to grant or withhold a private right of action for violation of a statute or the failure to perform a statutory duty is determined primarily from the language of the statute . . . . In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity is not subject to a construction establishing a civil liability. When a statute does not specifically create a private cause of action, one can be implied only if the legislation was enacted for the special benefit of a private party.

Id. (internal citations omitted).

"The search for the legislative intent [in South Carolina] comports with the standards used for testing federal rights of action as expressed by the Supreme Court

6

in Cort v. Ash, 422 U.S. 66 (1975)." Williams-Garrett v. Murphy, 106 F.Supp. 2d 834, 842 (D.S.C. 2000). Courts determining whether federal statutes grant a private cause of action "begin with the presumption that if a statute does not expressly create a private cause of action, one does not exist." Ormet Corp. v. Oh. Power Co., 98 F.3d 799, 805 (4th Cir. 1996). "By now, Congress is well aware of this presumption and how to provide private remedies." Id.

> Nonetheless, we may infer the existence of a private cause of action by applying the well settled test which requires that we determine (1) whether the plaintiff is "one of the class for whose *especial* benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether implication of a private remedy is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action sought is "one traditionally relegated to state law."

Id. (quoting Cort, 422 U.S. at 78) (emphasis in original).

Most courts have found that the Federal Nursing Home Reform Act ("FNHRA"), 42 C.F.R. § 483.10, does not confer a private cause of action. See, e.g., James v. Bd. of Curators of the Univ. of Mo., No. 09-2066, 2011 WL 147910, at *3 (E.D. Mo. Jan. 18, 2011); Duncan v. Johnson-Mathers Health Care, Inc., No. 09-0417, 2010 WL 3000718, at *3 (E.D. Ky. July 28, 2010); Brogdon v. Nat'l Healthcare Corp., 103 F.Supp. 2d 1322, 1330 (N.D. Ga. 2000); Tinder v. Lewis Cnty. Nursing Home Dist., 207 F.Supp. 2d 951, 957 (E.D. Mo. 2001); Grammer v. John J. Kane Reg. Cntrs., 570 F.3d 520, 531-32 (3d Cir. 2009) (finding civil liability for 42 C.F.R. § 483 available through § 1983 suits but not independently). Other courts have found that the Medicare and Medicaid Act, of which the FNHRA is a part, does not authorize private causes of action against nursing homes. See, e.g., Stewart v. Bernstein, 769 F.2d 1088, 1092 (5th Cir. 1985). This court joins the vast majority of

the courts in finding that the language of the FNHRA fails to demonstrate an express or implicit legislative intent to create a private cause of action.

South Carolina courts have yet to find that either South Carolina code of law § 44-81-10 or § 40-33-5 permits a private cause of action. This court need not reach this question, however, as that even if a private cause of action were permitted, plaintiffs failed to allege any specific section of either statute that was breached, how the breaches occurred, or how the breaches proximately caused Mrs. Salley's death. Plaintiffs insufficiently allege that defendants were negligent by "failing to perform the standards required by the Federal Nursing Home Reform Act and other federal and state statutes and regulations." Comp. ¶84(t). Plaintiffs did not further substantiate this allegation in their response to defendants' motion for summary judgment. Plaintiffs "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. Rule 56 instructs that "[t]he court need consider only the cited materials." This court should not be required to guess which provisions plaintiffs allege defendants breached or how the elements of the cause of action might be made out. In the light most favorable to them, plaintiffs have failed to demonstrate that there is a genuine issue of material fact regarding any putative cause of action under §§ 44-81-10 and 40-33-5.

Plaintiffs' negligence per se claim under S.C. Reg. 61-7 also fails because the regulation does not provide for a private cause of action. No court has addressed whether this statute creates a private right of action. The regulation lacks any language indicating the legislature intended to authorize a private right of action. The

statute was not "enacted for the special benefit of a private party," as Doe requires, rather, Reg. 61-7 is a licensing statute created to benefit the public in general. The regulation states its "Scope and Purpose" are for the "establishment of EMS program;" "general licensing, certification, inspection and training procedures;" "establishment of an Emergency Medical Service Council and duties of the Council;" and "Establishment of the Department of Health and Environmental Control authority for enforcement of these rules and regulations." Reg. 61-7 §100.

> Section 1302(H) of the regulation states that
>
> [p]ursuant to section 44-61-160 of the S.C. Code, a person who intentionally fails to comply with reporting, confidentiality, or disclosure of requirements in this section is subject to civil penalty of not more than one hundred dollars for a violation the first time a person fails to comply and not more than five thousand dollars for a subsequent violation.[2]

The statute also provides administrative remedies for other breaches of the statute. See, e.g., Reg. 61-17(401)(A). The South Carolina Supreme Court recognizes the "frequently stated principle of statutory construction . . . that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." Wogan, 623 S.E.2d at 117 (citing Northwest Airlines, Inc. v. Transp. Workers, 451 U.S. 77, 94 n.30 (1981)). Based on the foregoing, S.C. Reg. 61-7 does not create a private right of action.

The Omnibus Adult Protection Act, S.C. Code Ann. § 43-35-5, however, does permit a private cause of action. See Williams-Garrett, 106 F.Supp. 2d at 842.[3]

---

[2] Plaintiffs do not appear to allege that defendants violated Reg. 61-7 by failing to comply with the regulation's requirements regarding reporting, confidentiality or disclosure.

[3] The South Carolina District Court in Williams-Garrett found that the preamble and additional provisions to the statute demonstrated that the legislature intended to permit private rights of action. The preamble states that one of the purposes of the act was "to provide civil and criminal penalties for abuse, neglect, and exploitation," and the statute permits the Attorney General to bring a suit on behalf

Again, plaintiffs do not cite which portion of the statute defendants breached, but the only portion apparently relevant to plaintiffs' complaint governs knowing and willful neglect of a vulnerable adult. § 43-35-85. Defendants moved for summary judgment on the negligence per se claims both on the grounds that private actions were not permitted by the statutes *and* that there were no genuine issue of material fact regarding breach of the statutes after the conclusion of discovery. Plaintiffs failed to cite to any specific claim under the Omnibus Adult Protection Act. Under Rule 56, the court is only required to consider cited evidence. The court also has found no evidence in the entire record which, viewed in the light most favorable to plaintiffs, demonstrates that Heartland employees knowingly and willfully neglected Mrs. Salley.

### C. Breach of Contract

Having thoroughly considered the parties' written and oral submissions on the breach of contract claim, the court holds that genuine issues of material fact exist regarding whether defendants breached their contract to provide "comprehensive health care around the clock by experienced professionals." Pl.s' Ex. 21. Plaintiffs' evidence could demonstrate that defendants failed to provide around the clock medical assistance based on the ADL record. Since defendants only argued that the breach of contract claim should be dismissed for lack of a contract for a specific result, defendants' motion for summary judgment as to the breach of contract claim is denied.

---

of the state "in addition to any private cause of action for violation of the statute." See S.C. Code Ann. §§ 43-35-5(9), 43-35-80. No South Carolina state court has addressed the statute.

### D. Punitive Damages

"Punitive damages can only be awarded where the plaintiff proves by clear and convincing evidence the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights." Keane v. Lowcountry Pediatrics, P.A., 641 S.E.2d 53, 60 (S.C. Ct. App. 2007); Austin v. Specialty Transp. Serv., 594 S.E.2d 867, 875 (S.C. Ct. App. 2004). Viewed in the light most favorable to plaintiffs, the evidence fails to support plaintiffs' contention that defendants' alleged misconduct was willful, wanton, or reckless of the plaintiffs' rights.

### E. Parent Companies

Plaintiffs have failed to point to any act or omission Heartland's parent companies committed, except through the normal practice of corporate governance of a subsidiary. See, e.g., Johnson v. Ross, No. 10-1046, 2011 WL 1042246, at *6 (4th Cir. Mar. 23, 2011). Piercing the corporate veil is only reluctantly allowed under South Carolina law. Baker v. Equitable Leasing Corp., 271 S.E.2d 596, 600 (S.C. 1980).

South Carolina courts analyzing piercing claims examine the following factors: (1) whether the corporation was grossly undercapitalized for the purposes of the corporate undertaking; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation; (5) siphoning of funds of the corporation by the dominate shareholder; (6) non-functioning of other officers or directors; (7) absence of corporate records; and (8) the corporation serving as a façade for the operations of the dominant shareholder. Hunting v. Elders, 579 S.E.2d 803, 807 (S.C. Ct. App. 2004). None of these factors are present in this case.

Plaintiffs allege that Heartland did not pay rent because its parent companies own the property. Using a parent's property as if it were the subsidiary's may weigh in favor of piercing the corporate veil, however, as there is no evidence of undercapitalization or flaunting corporate formalities, this fact alone is insufficient to allow piercing. See, e.g., Gateway I Grp., Inc. v. Park Ave. Physicians, P.C., 877 N.Y.S. 2d 95 (N.Y. App. Div. 2009); Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57 (1st Cir. 1993).

Demonstrating a subsidiary is merely the "alter ego" of the parent corporation by showing that the parent company controls the business decisions and actions of its subsidiary is one method of piercing the corporate veil. Jones v. Enter. Leasing Co.-Se., 678 S.E.2d 819 (S.C. Ct. App. 2009). While the evidence shows that Heartland's parent companies provided a starting point for plaintiffs' financial decisions, characterized as a skeleton or a floor plan, this alone fails to meet the standard for controlling business decisions or actions of a subsidiary required for piercing the corporate veil on an alter ego theory. Finally, plaintiffs have agreed to dismiss HCR ManorCare Medical Services of Florida, LLC as a defendant.

## V.   CONCLUSION

For the foregoing reasons, the court **GRANTS** defendants' motion for summary judgment regarding plaintiffs' negligence per se claims and request for punitive damages and all claims against Manor Care, Inc. and HCR ManorCare, Inc. and **DENIES** defendants' motion for summary judgment regarding the negligence and breach of contract claims. Furthermore, the court **FINDS AS MOOT** defendants' motion for summary judgment regarding HCR ManorCare Medical

Services of Florida, LLC and the breach of fiduciary duty claim as that the parties have agreed to the dismissal of both.

    **AND IT IS SO ORDERED**.

*/s/ David C. Norton*
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**July 12, 2011**
**Charleston, South Carolina**